WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marisol Salzwedel, et al., | No. CV-16-00501-TUC-RM |
| Plaintiffs, | **ORDER** |
| v. | |
| United States, | |
| Defendant. | |

Pending before the Court are Plaintiffs' Motion in Limine Regarding Collateral Sources (Doc. 57) and Motion to Exceed Administrative Claim Demand (Doc. 58). The motions are fully briefed (Docs. 61, 64, 71).[1]

**I. Background**

On February 19, 2016, Plaintiffs filed this medical malpractice action in Pima County Superior Court, naming Marana Health Center ("MHC") and two medical doctors as defendants. (Doc. 1-3 at 7.)[2] On July 29, 2016, the United States of America, on behalf of MHC and the two medical doctors, removed the action to this Court. (Doc. 1.) The Court substituted the United States of America as the sole defendant (Docs. 3, 4), because the individual defendants were acting within the scope of their employment at

---

[1] Plaintiffs requested oral argument. The Court finds that the issues are adequately briefed and that the pending motions may be resolved without oral argument. Accordingly, the request for oral argument is denied.

[2] Record citations refer to the page numbers electronically generated by the Court's case management system.

the time of the matters alleged in the Complaint, MHC is an entity that receives federal grant money from the United States Public Health Service, and the United States Department of Health and Human Services has deemed MHC and its physicians or other licensed or certified health care practitioners to be employees of the Public Health Service for purposes of coverage under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*

On August 18, 2016, Plaintiffs filed their First Amended Complaint ("FAC") alleging medical malpractice against the United States pursuant to the FTCA. (Doc. 5.) The FAC contains the following allegations:

During mid- to late-2010, Plaintiff Marisol Salzwedel received medical care at MHC in connection with her first pregnancy. (Doc. 5, ¶¶ 18, 19.) During one of her hospital stays, MHC employees discovered that Mrs. Salzwedel has lipemia. (*Id.* ¶ 21.) None of MHC's employees informed Mrs. Salzwedel that she has lipemia. (*Id.* ¶ 23.)

In 2013, Mrs. Salzwedel began receiving treatment at MHC after becoming pregnant with her second child. (*Id.* ¶ 24.) Medical records generated during that time indicate that Mrs. Salzwedel's medical care providers were aware that she had a problem related to hyperlipidemia and had a family history of the same. (*Id.* ¶ 25.) During the second pregnancy, Mrs. Salzwedel reported symptoms of nausea, abdominal pain, and tachycardia, which Mrs. Salzwedel believed to be connected to eating. (*Id.* ¶¶ 26, 27.)

On February 21, 2014, Mrs. Salzwedel went to Northwest Medical Center with severe abdominal pain. (*Id.* ¶ 28.) When narcotics failed to relieve the pain, Mrs. Salzwedel was taken to an operating room to undergo a cesarean section. (*Id.* ¶¶ 28, 29.) Spinal anesthesia was ineffective, so Mrs. Salzwedel's doctors administered general anesthesia. (*Id.* ¶ 30.) The general anesthesia was only partially effective, and Mrs. Salzwedel felt the beginning of the operation, though she was unable to move. (*Id.* ¶ 31.) During the operation, a surgeon reported finding "very pink, creamy blood." (*Id.* ¶ 32.)

Mrs. Salzwedel continued to experience severe pain after the operation, despite her providers' attempts at pain control. (*Id.* ¶ 33.) Mrs. Salzwedel was admitted to the

intensive care unit after tests showed that she was suffering from hypertriglyceridemia. (*Id.* ¶ 34.) Mrs. Salzwedel's hypertriglyceridemia caused severe pancreatitis. (*Id.* ¶ 35.) Mrs. Salzwedel's pulmonary condition worsened, and by February 24, she needed to be intubated. (*Id.* ¶ 36.) Mrs. Salzwedel suffered renal failure and had to undergo plasmapheresis to address the hypertriglyceridemia. (*Id.*) Mrs. Salzwedel was discharged on March 14, but was readmitted on March 25 with an infected pancreatic pseudocyst. (*Id.* ¶¶ 36, 37.) Mrs. Salzwedel presently suffers physical pain and weakness, nerve damage, and post-traumatic stress disorder, and she is unable to work. (*Id.* ¶ 38.)

Based on the foregoing allegations, Plaintiffs allege a medical malpractice claim averring that Defendant (through its employees and contractors) breached the standard of care during Mrs. Salzwedel's second pregnancy by failing to monitor her lipids, quickly treat any dyslipidemia, and provide information concerning how to reduce the risk of dyslipidemia and pancreatitis. (*Id.* ¶¶ 41, 42.) Plaintiffs also assert a loss of consortium claim on behalf of Plaintiff Samuel Salzwedel. (*Id.* ¶ 45.)

## II. Motion in Limine Regarding Collateral Sources

### A. Motion Background

In their Motion in Limine Regarding Collateral Sources, Plaintiffs ask the Court to preclude the parties from introducing evidence of payments from collateral sources or reductions in the amount that Mrs. Salzwedel's health care providers accepted as full satisfaction for medical treatment provided. Plaintiffs argue that the collateral source rule is well-established under Arizona and federal law and that it prevents the introduction of evidence of third-party payments to reduce the amount of recoverable medical expenses. Plaintiffs further argue that A.R.S. § 12-565, which allows for the introduction of collateral source evidence in medical malpractice actions, is inapplicable to cases brought under the FTCA because (1) the United States is not a "licensed health care provider" as defined in A.R.S. § 12-561, and § 12-565 applies only to medical malpractice actions brought against "licensed health care providers," and (2) § 12-565 is exclusively

procedural in nature because it does not affect the amount of damages that a plaintiff may recover, and federal procedural law supersedes state procedural law in federal court.

Defendant argues that A.R.S. § 12-565 applies to this action because it can be liable only to the same extent as a private individual under like circumstances. *See* 28 U.S.C. §§ 1346(b)(1), 2674. Defendant emphasizes that Plaintiffs' claims are predicated on the alleged negligence of two "licensed health care providers," both of whom would be allowed to introduce evidence of collateral benefits under § 12-565. Since Defendant's liability must be identical to those private individuals, Defendant contends it should be allowed to introduce evidence of collateral benefits as well.

Defendant disputes that A.R.S. § 12-565 is exclusively a procedural rule. Defendant argues that Plaintiffs misunderstand the holding of *Eastin v. Broomfield*, 570 P.2d 744 (Ariz. 1977), which Plaintiffs cite for the proposition that "§ 12-565 is not substantive because it does not affect the measure of damages." Defendant argues that the *Eastin* court held only that A.R.S. § 12-565 does not place a cap on recoverable damages, and that this does not mean the statute has no effect on damages. Defendant argues that A.R.S. § 12-565 does affect the damages recoverable under the Arizona Medical Malpractice Act ("AMMA"), which makes it substantive and applicable to this FTCA action.

**B.   Discussion**

Section 12-565 of the AMMA relevantly provides:

> A.   In any medical malpractice action against a licensed health care provider, the defendant may introduce evidence of any amount or other benefit which is or will be payable as a benefit to the plaintiff as a result of the injury or death pursuant to the United States social security act, any state or federal workers' compensation act, any disability, health, sickness, life, income-disability or accident insurance that provides health benefits or income-disability coverage and any other contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of income-disability or medical, hospital, dental or other health care services to establish that any cost, expense, or loss claimed by the plaintiff as a result of the injury or death is

> subject to reimbursement or indemnification from such collateral sources. . . .
>
> B. Evidence introduced pursuant to this section shall be admissible for the purpose of considering the damages claimed by the plaintiff and shall be accorded such weight as the trier of the facts chooses to give it.

(footnotes omitted). The AMMA was enacted in response to a legislative concern with rising malpractice insurance premiums. *Eastin*, 570 P.2d at 752. Section 12-565 is intended to prevent medical-malpractice plaintiffs from obtaining windfall recoveries (thus resulting in lower premiums) by providing the factfinder with evidence of plaintiffs' true economic loss. *Id.* at 753. In determining medical-malpractice plaintiffs' damages, the factfinder may either choose to ignore the collateral benefits or choose to offset plaintiffs' damages by the amount of collateral benefits already received. *Id.* Thus, "admission into evidence of plaintiffs' collateral benefits in no way guarantees any reduction in the damages awarded by the trier of fact." *Id.*

There is no controlling authority explaining whether or not A.R.S. § 12-565 applies to FTCA cases. In *Siverson v. United States*, 710 F.2d 557, 559 (9th Cir. 1983), the district court concluded that A.R.S. § 12-565 did not apply to FTCA cases. The Ninth Circuit declined to examine that conclusion, reasoning that because A.R.S. § 12-565 confers the factfinder with discretion to ignore evidence of collateral benefits, the district court's refusal to consider such evidence on another ground (i.e., that the statute was inapplicable) could be treated as an exercise of that discretion. *Id.*

In *Estate of Sullivan v. United States*, 777 F. Supp. 695, 697, 701–02 (N.D. Ind. 1991), the Indiana district court concluded that A.R.S. § 12-565 was applicable to an FTCA case involving a death in Indiana that was allegedly caused by medical negligence in Arizona. Though the *Sullivan* court decided the present issue, that court does not provide any meaningful analysis regarding the correctness of applying A.R.S. § 12-565 to an FTCA action. Consequently, *Sullivan* is not persuasive.

In *Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988), a statute similar to A.R.S.

§ 12-565 was found applicable to FTCA actions. The Rhode Island statute relevantly provided:

> [I]n the event the defendant so elects, in an action for personal injury against a licensed physician, hospital, clinic, health maintenance organization or professional service corporation providing health care services . . . based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States social security act, any state or federal income disability or workers' compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services.

R.I. Gen. Laws § 9-19-34 (current version at R.I. Gen. Laws § 9-19-34.1).

The district court concluded that § 9-19-34 was inapplicable to FTCA actions because the United States was not one of the defendants listed in the statute and because the United States was not in the class of defendants (health care providers who purchase malpractice insurance) that the statute was designed to assist. *Reilly*, 863 F.2d at 162. The First Circuit reversed, explaining that the statute's language and the intent behind it were "irrelevant to the extent of the federal government's liability in an FTCA suit" because "[l]ocal law 'informs how a private party would be treated; it does not tell us, indeed it cannot, the extent to which the federal government has waived its sovereign immunity.'" *Id.* (quoting *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986)). The First Circuit concluded the United States was entitled to offer evidence of collateral benefits under § 9-19-34 because it could be liable only "to the same extent" as a private healthcare provider, *see* 28 U.S.C. § 2674, and a private healthcare provider would be allowed to seek an offset based on collateral benefits. *Id.*

Similarly, in *Scheib v. Fla. Sanitarium & Benevolent Ass'n*, 759 F.2d 859, 863–64 (11th Cir. 1985), the Eleventh Circuit found that Florida's statutory modification of the

collateral source rule applied in FTCA actions. The statute, Fla. Stat. § 768.50,[3] relevantly provided:

> In any action for damages for personal injury or wrongful death, whether in tort or in contract, arising out of the rendition of professional services by a health care provider in which liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such reward by the total of all amounts paid to the claimant from all collateral sources which are available to him[.]

In *Scheib*, the plaintiff argued that § 768.50 was inapplicable because the negligent medical employee was unlicensed by the state and thus not a "health care provider" as defined in the statute. 759 F.2d at 863. The Eleventh Circuit disagreed, finding that the government was entitled to a reduction under the statute because the government may be held liable only "to the same extent as a private individual in like circumstances," and the most analogous private individual would be a licensed health care provider who would receive the statute's benefits. *Id.* at 863–64.

The Court finds *Reilly* and *Scheib* persuasive and, consequently, finds that A.R.S. § 12-565 is applicable to this case.[4] Plaintiffs' first contention—that A.R.S. § 12-565 is inapplicable because the United States is not a "licensed health care provider" as defined in the AMMA—is foundationally flawed. Plaintiffs err by starting and ending their analysis with the language of A.R.S. § 12-565; the FTCA, not the AMMA, is the focal point of the inquiry. *Reilly*, 863 F.2d at 162. Section 12-565 merely informs the Court how an analogous, private individual would be treated in like circumstances; it does not determine "the extent to which the federal government has waived its sovereign

---

[3] Section 768.50 was repealed in 1986. A broader version of the statute is codified at Fla. Stat. § 768.76.

[4] Unlike A.R.S. § 12-565, which gives the factfinder discretion to ignore evidence of collateral benefits, the statutes at issue in both *Reilly* and *Scheib* required that a damages reward be reduced by the amount of collateral benefits received. The difference is immaterial and not a basis for distinguishing the present case, since the reduction requirement did not factor into either of those courts' decisions.

- 7 -

immunity." *Reilly*, 863 F.2d at 162 (citation and internal quotation marks omitted). In this case, a private individual under like circumstances (i.e., a licensed medical doctor accused of medical negligence) would be able to offer evidence of collateral benefits pursuant to A.R.S. § 12-565. Therefore, Defendant—who is liable to the same extent as that hypothetical individual—may offer such evidence as well. *See Scheib*, 759 F.2d at 864.

Plaintiffs' second contention—that A.R.S. § 12-565 is exclusively procedural in nature—is also without merit. Section 12-565 is substantive; although the statute permits the factfinder to ignore evidence of collateral benefits, it also provides the factfinder with discretion to reduce damages in accordance with the evidence of collateral benefits. *See Eastin*, 570 P.2d at 753 ("The resulting judgments [under § 12-565] will no doubt reflect a set-off for the benefits the plaintiff has already received . . . ."). Section 12-565's substantive nature has been confirmed by the Arizona courts. *Allen v. Fisher*, 574 P.2d 1314, 1315–16 (Ariz. Ct. App. 1977) (refusing to apply § 12-565 retroactively because it affects the measure of damages and is therefore substantive); s*ee Hall v. A.N.R. Freight Sys., Inc.*, 717 P.2d 434, 444 (Ariz. 1986) (citing *Allen* with approval).

Because A.R.S. § 12-565 is substantive, it applies to this action. *Liebsack v. United States*, 731 F.3d 850, 856 (9th Cir. 2013). Under Plaintiffs' position, the United States' liability would, in some cases, be greater than that of an analogous, private individual because it would be barred from seeking damages reductions that might be available to that private individual. Such an outcome would plainly violate 28 U.S.C. § 2674. *See Scheib*, 759 F.2d at 864 (Section 2674 "clearly means that state law cannot expand the Government's liability beyond that which could flow from an analogous private activity.").

Plaintiffs cite several cases for the proposition that "courts routinely apply federal common law to evidentiary issues in FTCA cases." These cases do not persuade the Court to reach a different conclusion, primarily because Plaintiffs' reliance on them is premised on their erroneous assertion that A.R.S. § 12-565 alters only the procedural

aspect of the collateral source rule. Plaintiffs also argue that the intent underlying A.R.S. § 12-565 (to lower malpractice insurance premiums) would not be served by applying the statute to this case. This argument is also unpersuasive; the intent of the Arizona legislature in enacting A.R.S. § 12-565 has no bearing on the federal government's liability under the FTCA. *See Reilly*, 863 F.2d at 162 (rejecting the same argument).

Plaintiffs' motion will be denied. Because A.R.S. § 12-565 is applicable to this case, evidence of collateral benefits is relevant and discoverable.

### III. Motion to Exceed Administrative Claim Demand

#### A. Motion Background

Attached as exhibits to Plaintiffs' Motion to Exceed Administrative Claim Demand are medical records pertaining to treatment received by Mrs. Salzwedel both before and after Plaintiffs filed their administrative claim. The records indicate that Mrs. Salzwedel's abdominal condition steadily improved after she was admitted to the hospital in March 2014 (the last medical event alleged in the FAC). (*See* Doc. 58-1.) On July 20, 2015, Mrs. Salzwedel saw her primary care physician, complaining only about numbness and tingling of her fingers and toes, symptoms for which she was seeing a neurologist. (*Id.* at 29.) Her primary care physician noted that, "[b]y and large her symptoms have improved and she has started gaining weight." (*Id.* at 29.)

Plaintiffs presented their administrative claim a few days later, on July 23, 2015, with a demand for $4.5 million. (*Id.* at 33–36.) They assert their claim was made under the belief that Mrs. Salzwedel's pseudocyst and other abdominal issues had resolved and would continue to improve, and that Mrs. Salzwedel's only ongoing conditions were her neuropathy and recently diagnosed post-traumatic stress disorder. (*See id.* at 38–39.) Since filing their claim, Mrs. Salzwedel has incurred over $400,000 in medical bills, arising primarily out of allegedly related abdominal issues. (*See* Docs. 58-1, 58-2, 71.) Plaintiffs assert that Mrs. Salzwedel's worsening condition was not reasonably discoverable at the time they filed their claim, and they should therefore be permitted to increase their demand.

## B. Legal Standard

An FTCA action against the United States for money damages may not be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . ." 28 U.S.C. § 2675(a). A claim is properly "presented" if the claimant files "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Blair v. IRS*, 304 F.3d 861, 864 (9th Cir. 2002) (internal quotation marks and citation omitted). "The requirement that the claim state a specific dollar sum is jurisdictional and cannot be waived." *Jacobson v. United States ex rel. U.S. Postal Serv.*, 276 F. Supp. 2d 1106, 1008 (D. Nev. 2003).

In an FTCA action, the claimant may not seek damages in excess of those demanded in the administrative claim, "except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). The plaintiff bears the burden of demonstrating that one of the exceptions of § 2675(b) is applicable. *Malmberg v. United States*, 816 F.3d 185, 196 (2d Cir. 2016); *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002).

Many courts recognize the two exceptions of § 2675(b) to be "distinct, with 'newly discovered evidence' referring to evidence existing, but not discoverable, at the time a claim is filed, and 'intervening facts' relating to information or events arising after the filing of the claim." *Priest v. United States*, No. 3:14-cv-500-AC, 2015 WL 6457997, at *5 (D. Or. Oct. 26, 2016); *see also Salas v. United States*, No. 12cv0337 JAH(BLM), 2013 WL 6244144, at *3 (S.D. Cal. Dec. 2, 2013). Under either exception, however, the critical inquiry is foreseeability. *Priest*, 2015 WL 6457997, at *5. The plaintiff must show that the "full extent" of her injuries was not "reasonably foreseeable" as of the date she filed her administrative claim. *Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

"The Ninth Circuit has yet to issue significant guidance regarding Section 2675(b)." *Resnansky v. United States*, No. 13-cv-05133-DMR, 2015 WL 1968606, at *3 (N.D. Cal. May 1, 2015). "The question of whether an increase is justified by newly discovered evidence or intervening facts is inherently fact-specific," making it difficult to articulate a clear statement of how § 2675(b) should be applied in any given case. *Id.* at *4, 6. However, certain tenets can be distilled from a survey of case law from other circuit courts and from district courts within the Ninth Circuit.

New, unforeseeable diagnoses or "[a]n unforeseen worsening of a known injury may constitute 'newly discovered evidence' or 'intervening facts' under § 2675(b)." *Zurba v. United States*, 318 F.3d 736, 739, 741-42 (7th Cir. 2003). Plaintiffs "should not be charged with knowing what" physicians could not tell them. *Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985); *see also Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986). However, information does not qualify as newly discovered evidence or intervening facts if it is merely "cumulative and confirmatory" of what the claimant had been told prior to filing her administrative claim. *Kielwien v. United States*, 540 F.2d 676, 680 (4th Cir. 1976). Similarly, information does not qualify if a plaintiff could have discovered it with reasonable diligence before filing her administrative claim. *Priest*, 2015 WL 6457997, at *5.

In the present case, the parties dispute whether a claimant is under an obligation to base her administrative claim on a worst-case scenario, and whether such a rule would serve or defeat the purposes of 28 U.S.C. § 2675. In practice, courts have consistently required claimants to guard against *reasonably foreseeable* worst-case scenarios. *See, e.g.*, *Carswell v. United States*, No. 2:15-cv-01345-RAJ, 2017 WL 1479370, at *3 (W.D. Wash. Apr. 25, 2017) ("When existing medical evidence and advice put the claimant on fair notice to guard against the worst case scenario in preparing the administrative claim, an attempt to increase the amount of the claim during litigation should be rejected." (internal quotation marks and citation omitted)). Such an approach is consistent with the underlying purpose of § 2675(b), which "is to put the government on notice of its

maximum potential exposure to liability," *Zurba*, 318 F.3d at 743, so that it "will be in a position to make intelligent settlement decisions," *Allgeier v. United States*, 909 F.2d 869, 878 (6th Cir. 1990). "[I]f the exact nature, extent and duration of each recognized disability must be known before § 2675(b) will be given effect," the statutory provision would "be rendered useless" and the government would "be unable to evaluate any claim made against it without the threat that, if it does not settle, its liability may increase substantially." *Low*, 795 F.2d at 471; *see also Kielwien*, 540 F.2d at 681 (Section 2675(b) "would be meaningless if claimants, after rejection of their claim, could institute actions for amounts in excess of the claim filed merely because they, or their attorneys, are of the opinion that the claim has a greater value"). However, requiring a claimant to guard against outcomes that are merely theoretically possible—as opposed to reasonably foreseeable—would incentivize claimants to unrealistically inflate their administrative-claim demands, making it more difficult for the government to make intelligent settlement decisions. *Resnansky*, 2015 WL 1968606, at *4. Accordingly, a claimant is obligated to base her administrative claim on *reasonably foreseeable* worst-case scenarios, rather than worst-case scenarios that are merely *conceivable*.

In cases where the plaintiffs were aware at the time they filed their administrative claims of the basic severity of the injuries at issue, and a "reasonable worst-case prognosis would have predicted what actually came to pass," courts have capped damages at the amount sought in the administrative claims. *Lebron v. United States*, 279 F.3d 321, 331 (5th Cir. 2002); *see also, e.g.*, *Low*, 795 F.2d at 471. In contrast, courts have allowed damages in excess of the amounts sought in administrative claims where, at the time the administrative claims were filed, the plaintiffs could not have known that the injuries at issue would not heal without surgery, *see, e.g.*, *United States v. Alexander*, 238 F.2d 314, 318 (5th Cir. 1956), or the plaintiffs' doctors had not ascertained the true nature and extent of the illness, *see, e.g.*, *Fraysier*, 766 F.2d at 479-81.

**C. Discussion**

Plaintiffs have identified evidence indicating that, at the time they filed their

administrative claim, they reasonably believed that Mrs. Salzwedel's pancreatitis and pancreatic pseudocysts had resolved. They have also identified evidence that, after the filing of the administrative claim, Mrs. Salzwedel suffered further complications—including bowel obstructions, pelvic fluid build-up, and pancreatic pseudocysts—that Plaintiffs did not foresee. For the following reasons, the Court will grant the motion in part to the extent that Plaintiffs may present evidence of damages exceeding the amount sought in their administrative claim, but the Court will defer ruling on the issue of whether Plaintiffs are entitled to recover such damages until the summary judgment stage or after trial.

Defendant disputes whether Mrs. Salzwedel's abdominal pain had resolved by the time the administrative claim was filed, and whether Plaintiffs had been warned, prior to the filing of the administrative claim, of the possibility or likelihood of future complications from Mrs. Salzwedel's pancreatitis and pseudocysts. Defendant further disputes whether Mrs. Salzwedel's medical records reflect a recurrence of pancreatitis and/or pancreatic pseudocysts after the filing of the administrative claim. Finally, Defendant disputes whether certain medical issues—such as Mrs. Salzwedel's October 2015 seizure, her ovarian cysts, and her March 2017 possible gallbladder infection—are causally related to the alleged negligent conduct at issue in this litigation. Defendant contends that further discovery, including depositions of retained experts and Mrs. Salzwedel's treating providers, will provide additional evidence relating to causation and other issues raised by Plaintiffs' Motion.

In addition to raising factual disputes regarding Plaintiffs' characterization of Mrs. Salzwedel's medical records and urging the Court to defer ruling on Plaintiffs' Motion, Defendant complains that Plaintiffs have not identified the amount they are seeking in excess of their administrative claim. Defendant correctly argues that the claim requirement of 28 U.S.C. § 2675 is jurisdictional and cannot be waived, and that it requires presentation of a sum-certain damages claim. *See Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985). However, the claim requirement of § 2675 relates to the

presentation of *administrative* claims. Plaintiffs properly presented a sum-certain demand in their administrative claim. (*See* Doc. 58-1, Exh. 9.) Defendant has identified no authority that requires FTCA plaintiffs to include a sum-certain damages claim in their complaint once they initiate a lawsuit. Indeed, "the prayer for damages in a contested case . . . does not limit the relief that the trial court may grant." *Resnansky*, 2015 WL 1968606, at *10.

Nevertheless, it is appropriate to consider whether Defendant would be prejudiced by the timing of Plaintiffs' request to exceed their administrative claim demand. *See id.* at *9-10. Neither Plaintiffs' Amended Complaint (Doc. 5) nor the parties' Rule 26(f) Report (Doc. 8) gives any indication of Plaintiffs' intent to seek damages in excess of their administrative claim demand. Defendant avers that they were not made aware of Plaintiffs' intent to exceed their administrative claim demand until late July 2017 (Doc. 64 at 2)—over seven months after expiration of the deadline for amending pleadings. (Doc. 54 at 1). However, it is not clear that Plaintiffs are required to move to file a Second Amended Complaint under Rule 15 in order to recover damages in excess of the amount sought in their administrative claim. *See Resnansky*, 2015 WL 1968606, at *9. Furthermore, "courts routinely consider whether a plaintiff may recover in excess of his or her administrative claim at or after trial." *Id.* at *10; *see also, e.g.*, *Hill v. United States*, No. C00-4620 BZ, 2002 WL 855909, at *1 (N.D. Cal. Apr. 2, 2002) (court took request to seek damages in excess of amount sought in administrative claim under advisement subject to evidence presented at trial). The Court "cannot say that Defendant was not on notice" that issues concerning the exceptions to § 2675(b) might arise in this litigation. *Resnansky*, 2015 WL 1968606, at *10. Furthermore, the rebuttal expert disclosure and discovery deadlines have been extended (Docs. 82, 83), thus allowing Defendant a full opportunity to address Plaintiffs' factual allegations concerning medical expenses incurred after the filing of Plaintiffs' administrative claim.

The Court agrees with Defendant that it is appropriate to defer ruling on the issue of whether Plaintiffs are entitled to recover damages in excess of the amount sought in

their administrative claim. Given Mrs. Salzwedel's complicated medical history and the apparent existence of factual disputes, the Court is unable to determine, based on the current record, whether Mrs. Salzwedel's post-claim medical issues were caused by the alleged medical malpractice at issue in this lawsuit, whether they were reasonably foreseeable at the time Plaintiffs filed their administrative claim, and whether they support an award in excess of the amount stated in the administrative claim. *See Low*, 795 F.2d at 470 (to satisfy one of the § 2675(b) exceptions, evidence "must not have been reasonably capable of detection at the time the administrative claim was filed" and "must support the increase in the prayer over the administrative claim"). Discovery is ongoing and may reveal additional evidence relevant to these issues. The issue of whether Plaintiffs can satisfy one or both of the exceptions of § 2675(b) is most appropriately resolved after the close of discovery, either on summary judgment in the absence of material factual disputes, or after the presentation of evidence at trial. *See Resnansky*, 2015 WL 1968606, at *10; *Hill*, 2002 WL 855909, at *1. Accordingly, the Court will partially grant Plaintiffs' Motion to Exceed Administrative Claim Demand to the extent that it requests an opportunity to *present evidence* of damages exceeding the amount sought in Plaintiffs' administrative claim; however, the Court will reserve ruling on the issue of whether Plaintiffs are entitled to *recover* such damages.

**IT IS ORDERED** that Plaintiffs' Motion in Limine re Collateral Sources (Doc. 57) is **denied**. Evidence of collateral benefits is relevant and discoverable.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exceed Administrative Claim Demand (Doc. 58) is **partially granted** as follows: Plaintiffs may *present evidence* of damages exceeding the amount sought in their administrative claim, but the Court reserves ruling on the issue of whether Plaintiffs are entitled to *recover* damages in excess of the amount sought in their administrative claim.

Dated this 18th day of January, 2018.

_____
Honorable Rosemary Márquez
United States District Judge